UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WAYNE MILLER,

                                        Plaintiff,
                        vs.                                    9:07-CV-942
                                                              (J. Scullin)

BRIAN FISCHER, MARK LEONARD, W. LAPE,
and W. HAGGETT,

                                        Defendants.
_____

WAYNE MILLER, Plaintiff Pro Se
CHRISTINA L. ROBERTS-RYBA, Assistant Attorney General for Defendants
JUSTIN C. LEVIN, Assistant Attorney General for Defendants

GUSTAVE J. DI BIANCO, United States Magistrate Judge

## REPORT-RECOMMENDATION

    This matter has been referred to me for Report and Recommendation by the

Honorable Frederick J. Scullin, Jr. Senior United States District Judge, pursuant to

28 U.S.C. § 636 (b) and Local Rules N.D.N.Y. 72.3(c).

    In this civil rights complaint, plaintiff alleges that defendants have interfered

with his right to worship in the Pagan/Wiccan religion in violation of his

constitutional rights.  Plaintiff seeks substantial monetary and injunctive relief.

    Presently before the court is plaintiff's motion for summary judgment pursuant

to FED. R. CIV. P. 56.  (Dkt. No. 39).  Defendants have cross-moved for summary

judgment.  (Dkt. No. 46).  Plaintiff has responded in opposition to defendants'

motion.  (Dkt. No. 49).  For the following reasons, this court recommends that

defendants' motion for summary judgment be granted, and the case be dismissed as

to all defendants.

**DISCUSSION**

**1.    Summary Judgment**

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact.  FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." Id.  However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986); see also *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

In meeting its burden, the party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying the portions of the "'the pleadings, depositions, answers to interrogatories, and admissions on the file, together with any affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the non-movant bears the burden of proof at trial, the moving party may show that he is entitled to summary judgment by either (1) pointing to evidence that negates the non-movant's claims or (2) identifying those portions of the non-movant's evidence that demonstrate the absence of a genuine issue of material fact.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006) (citing *Celotex Corp.*, 477 U.S. at 23).  The second method requires identifying

evidentiary insufficiency, not merely denying the opponent's pleadings. *Id.*

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id.*  A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## 2.   **Facts**

Plaintiff is currently incarcerated at Auburn Correctional Facility, but resided at Coxsackie for approximately one year.[1]  (Dkt. No. 46, Levin Dec'l, Ex. B (Deposition Transcript ("Depo.") at 7).  Plaintiff states that he subscribes to the "Pagan/Wiccan" religion.(Compl. at ¶ 10).  In July 2007, plaintiff formally requested permission from Father Reddie[2] to possess and use in his cell ("with appropriate permits and forms") certain items "that were needed to exercise, practice, and worship his Religious beliefs . . . ."  *Id*. & Pl. Ex. A (Dkt. No. 39)  The items were a chalice, an altar cloth, a rune set, an altar pentacle, a cone incense burner, cone

---

[1]Plaintiff stated at his deposition that he served approximately twelve and one half years at Auburn, and one year at Coxsackie for second degree murder.  (Depo. at 7-8).  While at Auburn, plaintiff's security status changed, and he was transferred to Coxsackie.  *Id*.  Plaintiff requested to return to Auburn, and was moved again based on a "preferential draft."  *Id*.  At the time of his deposition in September 2008, plaintiff had been back at Auburn for "about a year."  *Id*.

[2]Father Reddie is the "Coordinating Chaplain" at Coxsackie. Def. Rule 7.1 Statement ¶ 2. He is referred to as either Father Reddie or Chaplain Reddie, and he is not named as a defendant in this action.

incense and natural oils. *Id*. Plaintiff stated that he specifically did not request other items, like candles, athame[3], a wand, and a cauldron, so as not to run afoul of the facility's concerns about safety and security. *Id*. Plaintiff included copies of teaching materials related to the religion and several pages from a catalog with pictures and descriptions of the items. (Compl. at ¶ 10).

Defendant William Haggett, the Deputy Superintendent of Programs at Coxsackie, responded to plaintiff's request on August 6, 2007. Pl. Ex. D (Dkt. No. 39). Defendant Haggett told plaintiff that Father Reddie forwarded plaintiff's request to defendant Mark Leonard, the Director of Ministerial and Family Services. *Id*. Defendant Haggett also told plaintiff that Mr. Leonard found that the items requested were "likely all associated with your declared faith," but Mr. Leonard noted that several of the items plaintiff requested were not likely to be "allowed through the facility package room." *Id*. Defendant Haggett stated that plaintiff could have any of the items allowed by Package Room directive, however, any additional items would require a "local permit." *Id*. Plaintiff was told to write directly to Superintendent Lape to request "local permit items." *Id*.

Plaintiff states that this response was "very vague and ambiguous," and claims that the response was made in a very "underhanded and bad faith way." (Compl. at ¶ 11). In his declaration in support of defendants' motion for summary judgment, Defendant Haggett states that "at all times, plaintiff could have attempted to obtain any item he desired through normal Package Room procedures." Haggett Dec'l at

---

[3]At his deposition, plaintiff stated that an athame "would be used for cutting herbs and spices, a loaf of bread, slice of fruit . . . ." (Depo. at 15).

4

¶ 31 (Dkt. No. 46).  Defendant Haggett also states that in the meantime, he began "an investigation into the permissibility of the requested items."  *Id*. at ¶ 32.

On August 10, 2007, plaintiff wrote a letter to defendant Superintendent Lape requesting permission to possess the items "for in Cell, Personal use only".  Pl. Ex. E (Dkt. No. 39).  In his letter to Superintendent Lape, plaintiff included a copy of his original request[4] to Father Reddie.  *Id*.  In the complaint, plaintiff alleges that on August 10, 2007, he also wrote a letter to defendant Leonard, though no copy of this letter has been made part of the record in this case. (Compl. at ¶ 14).

On August 20, 2007, defendant Haggett responded to plaintiff's August 10 letter on behalf of Superintendent Lape.  Pl. Ex. F (Dkt. No. 39).  Defendant Haggett stated

> anything you request must meet the conditions of the Package Room directive.  Please take some time to carefully read this directive.  Once you have a thorough command of it, please provide me with a list (and photographs if you have them available) of each item for which you are requesting a permit.  Once we have your request, we will provide either denials or permits as we find appropriate.

*Id*.  Plaintiff states that he did not receive defendant Haggett's August 20, 2007 response until plaintiff returned to his cell at 5:20 p.m. on August 21, 2007. (Compl. at ¶¶ 15-16).  Plaintiff states that by the time he received this response from defendant Haggett, plaintiff had already filed a grievance about this issue.  Plaintiff characterizes defendant Haggett's August 20th response as "another vague and ambiguous answer." Compl. ¶ 16.  Plaintiff then interprets the language of the

---

[4]It is unclear whether plaintiff also submitted all of the documentation that accompanied the original request.

response as "hinting" that plaintiff should order items that were allowed only for Native American inmates.  Plaintiff claims that defendant Haggett gave him this advice in "bad faith" so that plaintiff would get a misbehavior report for possessing items that were not allowed for the Pagan/Wiccan Religion. *Id*.

In the grievance that plaintiff filed in the morning of August 21, 2007, he cited the Federal and New York State constitutions and the Universal Declaration of Human Rights as part of his request for permission to use a chalice, incense and an incense burner, oil, an altar cloth, an altar pentacle, and rune stones. Levin Dec'l, Ex. C at 4-6 (Dkt. No. 46).  In his grievance, plaintiff requested that Directive 4911 be amended to include the Pagan/Wiccan religion as an authorized religion and to recognize the items used to worship in this religion as approved for possession and use. *Id*. at 6.

Plaintiff states on August 21, 2007, in addition to defendant Haggett's response, plaintiff also received a response from defendant Leonard. (Compl. at ¶ 17).  Plaintiff does not include the letter in his papers, but states that it was "vague and ambiguous" and alleges that defendant Leonard did not properly address plaintiff's questions and concerns.  *Id*.  On August 22, 2007, plaintiff responded to defendant Haggett's August 20, 2007 letter. Pl. Ex. G (Dkt. No. 39).  Plaintiff sent defendant Haggett the original request, including the catalog pictures of the items plaintiff requested. *Id*.  In this letter, plaintiff complained to defendant Haggett that he appeared to be encouraging plaintiff to use the "Native American guide lines [sic]."  *Id*.  Plaintiff also stated that this could result in plaintiff's possession of items

6

that would be considered "contraband" when possessed by inmates who were not Native Americans. *Id.*

The *same day*, August 22, 2007, Defendant Haggett responded to plaintiff's letter. Pl. Ex. H (Dkt. No. 39). Defendant Haggett stated that although he received a "considerable stack of documents" from plaintiff, apparently these documents did not contain the list of items that defendant Haggett requested. *Id.* Defendant Haggett stated that he could not assist plaintiff any further without the list and description of the items. *Id.* Defendant Haggett gave plaintiff the option of ordering the items that he believed were allowed by the package room directive and "allow normal package processing." *Id.*

Plaintiff responded to defendant Haggett's August 22nd letter on August 27, 2007. Pl. Ex. I (Dkt. No. 39). Plaintiff again included a copy of the original request and explained that the first two pages contained the list of items, and the appendix contained photographs of the items. *Id.* Plaintiff also requested that defendant Haggett explicitly acknowledge receipt of the documents by signing an "Acknowledgment of Reception" and returning the acknowledgment to plaintiff. *Id.*

Defendant Haggett responded the *same day*, August 27, 2007. Pl. Ex. J. (Dkt. No. 39). Defendant Haggett authorized plaintiff to order one set of runes and one pentacle, stating that a permit would be issued for plaintiff to use these items in his cell. *Id.* Defendant Haggett also stated that the scented oils were available from the "MMB[5] fund raising committee", and gave plaintiff the name of a person to contact.

---

[5]Defendants' Statement Pursuant to Local Rule 7.1(a)(3) states that this is the Muslim faith's fund raising committee. Local Rule 7. 1(a)(3) Statement at ¶ 22 (Dkt. No. 46).

*Id*.  In his declaration in this case, defendant Haggett argues that his August 27, 2007 memorandum demonstrates that "when items were determined to be permissible within the facility, I immediately informed plaintiff so that he could obtain those approved items."  Haggett Dec'l at ¶ 41 (Dkt. No. 46).

On September 11, 2007, plaintiff was issued a "Local Permit," authorizing him to possess a 25-stone rune set and a pentacle. Pl. Ex. O (Dkt. No. 39).  The permit states that items were not to be "loaned, sold, traded, or disposed of in any way", without the Superintendent's approval.  *Id*.  The permit also states that it is valid only at Coxsackie Correctional Facility, and that if transferred, plaintiff must obtain a local permit at the new facility. *Id*.

The court notes that on September 5, 2007, the Inmate Grievance Review Committee ("IGRC") found that plaintiff's August 21, 2007 grievance was beyond the scope of the committee to remedy. Pl. Ex. N (Dkt. No. 39).  Plaintiff appealed to defendant Lape. *Id*.  On September 11, 2007, Superintendent Lape  responded to plaintiff's appeal of the IGRC determination.  Levin Dec'l, Ex. D.  Superintendent Lape stated

> This grievance is accepted to the extent that the grievant may practice his faith in accordance with Directive 4202 and may have items needed for his faith that are allowable through the package room including one set of runes and one pentacle which would require a permit to be issued by the package room.  If the grievant needs any assistance in meeting the needs or requirements of his faith, he may contact the facility chaplain.

*Id*.

Plaintiff was transferred back to Auburn Correctional Facility on September

13, 2007.[6]  Haggett Dec'l at ¶ 35; Lape Dec'l at ¶ 18 (Dkt. No. 46).  Defendant

Haggett states when plaintiff was transferred, Haggett "was still trying to determine

the permissibility of the [other] requested items," and that plaintiff was transferred

"before [he] could fully investigate the feasibility of permitting him to possess the

remainder of the items that he requested."  Haggett Dec'l at ¶ 35-36.

Plaintiff appealed defendant Lape's determination of the grievance on

September 26, 2007. Levin Dec'l, Ex. D.  Plaintiff argued that the Superintendent's

response did not address most of the items in question: the chalice, incense, incense

burner, altar cloth, and oils. *Id*.  By the time plaintiff filed his grievance appeal, he

had already been transferred to Auburn.

The Central Office Review Committee ("CORC") eventually upheld defendant

Lape's decision. Pl. Ex. WW (Dkt. No. 39).  In a decision dated January 2, 2008, the

CORC cited to a prior CORC decision,[7] finding that "herbs and incense are not

necessary to practice the grievant's religion."  *Id*.  CORC also concluded that

plaintiff could obtain a prayer robe and religious pendant in accordance with

Directive No. 4911,[8] and that plaintiff could request a permit from the "coordinating

---

[6]Plaintiff's complaint was filed with the Clerk two days prior to his transfer to Auburn Correctional Facility.  Plaintiff's complaint does not include any information about the transfer, but plaintiff's motion for summary judgment details some problems he experienced in trying to maintain possession of his religious items that had been approved at Coxsackie.  Pl. Affidavit at ¶¶ 27-30, 33-34, 38, 47 (Dkt. No. 39).

[7] The prior decision cited by the CORC is dated January 24, 2007, and does not appear to be related to plaintiff's case. Pl. Ex. WW.  Plaintiff was provided with this decision by order of this court, dated October 30, 2008.  Plaintiff has included defense counsel's letter indicating that he sent plaintiff a copy of the decision. Pl. Ex. E3 (Dkt. No. 39).

[8] This directive is referred to as the "Package Room Directive."

9

chaplain" to possess the shrine, chalice, alter pentacle, and altar cloth. *Id.*  The chaplain would assist plaintiff in determining whether those items would be allowed at Auburn. *Id.*  The CORC specifically mentioned that plaintiff had been transferred. *Id.*

With his motion for summary judgment, plaintiff has included over sixty exhibits, including correspondence to and from non-defendants at Auburn Correctional Facility.  While at Auburn Correctional Facility in October of 2007, plaintiff was issued a permit to possess a "Shrine/Altar/Symbol - (Pentacle . . .)" and one set of runes.  Defs. Ex. II (Dkt. No. 46).  In October 2007, plaintiff was also granted permission at Auburn "to order Sacred Oils and other religious goods" from a company specializing in these products. Defs. Ex. RR (Dkt. No. 46).

Plaintiff was deposed in this case in September of 2008.  At plaintiff's deposition, he stated that at Auburn, he still did not possess the "incense, the incense burner and the chalice."  (Depo. at 20).  Defendants argue that in his motion for summary judgment, plaintiff has conceded that "he now has access to every item that he sought access to except the incense and the incense burner."  Local Rule 7. 1(a)(3) Statement at ¶ 22 (Dkt. No. 46).  Plaintiff states that the New York State Department of Correctional Services ("NYSDOCS" or "DOCS") has "conceded" that he was entitled to five of the items at issue in this litigation, but that there is no such "concession" for the incense and incense burner.  (Dkt. No. 39 at ¶ 65).

In plaintiff's complaint, he based his claims for relief only on 42 U.S.C. § 1983, alleging that defendants violated plaintiff's First Amendment right to

practice his religion. Compl. at ¶ 1.  The complaint also raises "due process" and "equal protection claims."  In his motion for summary judgment, plaintiff also purports to bring claims under the Religious Land Use and Institutionalized Persons Act  (RLUIPA), 42 U.S.C. § 2000cc *et seq*.  Defendants argue that the court should not address plaintiff's RLUIPA claim because plaintiff did not raise the claim in his original complaint and has not moved to amend. Def. Mem. of Law at 23-24 (Dkt. No. 46-3).  This court finds, however, that regardless of how plaintiff raises his claims, they cannot survive defendants' motion for summary judgment.

## 3.  <u>First Amendment</u>

It is well-settled that inmates have the right under the First and Fourteenth Amendments to freely exercise a chosen religion. *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003)(citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).  However this right is not limitless, and may be subject to restrictions relating to legitimate penological concerns. *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir.), *cert. denied*, 498 U.S. 951 (1990).  The analysis of a free exercise claim is governed by the framework set forth in *O'lone v. Estate of Shabazz*, 482 U.S.342 (1987) and *Turner v. Safely*, 482 U.S. 78, 84 (1987).  This framework is one of reasonableness and is less restrictive than ordinarily applied to the alleged infringements of fundamental constitutional rights. *Ford*, 352 F.3d at 588.

In *O'Lone*, the Supreme Court held that a regulation that burdens a protected right withstands a constitutional challenge if that regulation is reasonably related to legitimate penological interests. 482 U.S. at 349 (quoting *Turner*, 482 U.S. at 89).

An individualized decision to deny an inmate the ability to engage in a religious exercise is analyzed under the same standard. *Salahuddin v. Goord*, 467 F.3d 263, 274 n.4 (2d Cir. 2006)(citations omitted).  In *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988), the Second Circuit held that in assessing a free exercise claim, the court must determine "(1) whether the practice asserted is religious in the person's scheme of beliefs and whether the belief is sincerely held; (2) whether the challenged practice of prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological interest."

The court must examine whether the challenged action has a legitimate, rational connection to the governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact on guards, inmates, and prison resources of accommodating that right; and the existence of alternative means of facilitating the exercise of that right that have only a *de minimis* adverse effect on the valid penological interests. *See King v. Bennett*, 2007 U.S. Dist. LEXIS 27702, *12-13 (W.D.N.Y.  March 30, 2007)(citing *Salahuddin*, 467 F.3d at 274). Finally, once prison officials state a legitimate penological interest to justify their actions, the burden shifts to plaintiffs to show that the defendants' concerns are "irrational." *Ford*, 352 F.3d at 595.

### A.  DOCS Directives

In this case, the defendants do not dispute that plaintiff belongs to the Wiccan/Pagan religion, nor do they dispute the sincerity of his beliefs.  Plaintiff

initially requested seven items in late August of 2007.  He has been allowed access[9]

to all but *two* of those items, incense and an incense burner. Two Department of

Correctional Services (DOCS) Directives are involved.  DOCS Directive # 4202 is

entitled "Religious Programs and Practices and DOCS Directive # 4911 is entitled

"Packages and Articles Sent or Brought to Facility."  Directive # 4202 clearly

specifies that

> the Department takes no position 'acknowledging' any particular religion
> within its inmate population.  The Department merely attempts to identify
> particular faiths within the inmate population in an effort to accommodate the
> legitimate spiritual needs of its inmates as reasonably as possible in a manner
> which is commensurate with its legitimate correctional interests and the safety
> and security of its respective facilities.

Directive # 4202(C).

Directive 4911 is a lengthy directive, designed to inform inmates about the

DOCS policies and procedures governing packages and articles sent or brought to

facilities and received through the facility package room, including religious articles

that may be obtained through outside sources. DOCS Directive # 4911(I)(general

description); 4911 (Attachment D, § J).  Attachment D, section J contains the

religious items that are approved for all facilities and that may be ordered through the

"Package Room." If the item that an individual wishes to order is not listed in

Attachment D, then the inmate may apply for a "Local Permit." DOCS Directive

---

[9] Plaintiff does not seem to question this statement by defendants.  However, it is unclear whether plaintiff actually has a chalice.  He first testified that he was given everything but the chalice, the incense, and the incense burner, but he later testified that he has not requested a chalice while at Auburn. (Depo. at 33, 52, 57).  Whether he has actually obtained the chalice is not as important as whether he would be allowed to order a chalice and obtain a local permit for the item.

# 4911(IV).  The section explaining "Local Permits" states that certain articles cannot be approved on a Department-wide basis because of programmatic and physical plant characteristics of individual facilities. *Id.* # 4911(IV)(A).  An inmate must apply for a "Local Permit," and by its nature, a "Local Permit" applies only to the facility for which it was issued. *Id.* # 4911(IV)(A)(4).

Although in his facility grievance,[10] plaintiff stated that he wished to have the Directives "amended," he has not shown that the Directives themselves are unconstitutional.  In his federal complaint, he states generally that the defendants are "creating" and enforcing rules, regulations, directives, policies, and procedures that are unconstitutional. Compl. ¶¶ 32, 33.  The court will assume that he is challenging the directives and will address this issue.

Plaintiff has cited no basis for finding that the cited directives discriminate against his or any other religion or that the system of requiring "Local Permits" for certain items is unconstitutional.  The fact that an item may be approved at one facility does not indicate that it must be approved at every facility, nor does having to apply for a new "Local Permit" impose a substantial burden on the inmate.  The facility has a security interest in regulating the items that are brought into and kept in a particular inmate's cell, thus pre-approval of some items is not possible.  The DOCS legitimate interest in security clearly outweighs the slight inconvenience to the inmate of reapplying for the permit.  The Directives ***themselves*** are reasonably related to a legitimate penological interest.

---

[10] Plaintiff does not appear to specifically request this form of injunctive relief in this action.

## B.  Individual Religious Items

As stated above, plaintiff is basically arguing that he was not afforded his religious items in a timely fashion, and that he was not allowed to obtain incense and an incense burner.  Although it appears that there may have initially been some confusion regarding the articles that plaintiff wished to obtain, he communicated extensively with defendant Haggett.  Plaintiff did not even wait for the defendant's response before filing his grievance.  Plaintiff's own exhibits contain several letters that plaintiff received from defendant Haggett, who was attempting to explain to plaintiff the procedure involved for obtaining his requested items. Pl. Exs. D, F, H, J. Plaintiff's first letter to Chaplain Reddie was on July 2007. Pl. Ex. A.[11]

Because the determination of plaintiff's request was beyond Chaplain Reddie's authority, the request was forwarded to defendant Leonard. Leonard Decl. ¶ 17. Defendant Leonard states that he reviewed plaintiff's requests and determined that they were all items associated with the Pagan/Wiccan faith. *Id.* ¶ 18.  Defendant Leonard states that he then assigned to Coxsackie's management personnel the task of determining whether those items would be permitted. *Id.* ¶ 19.  Although it is unclear when defendant Haggett received the assignment to review plaintiff's requests, defendant Haggett's first memorandum to plaintiff was dated August 6, 2007. Pl. Ex. D.  By September 11, 2007, plaintiff had received a "Local Permit" for his pentacle and his rune stones. Pl. Ex. O.

---

[11] Plaintiff's first letter is not dated, but the court accepts plaintiff's assertion that the letter was sent in July of 2007.  Plaintiff's letter addressed to Counselor Ryan is dated July 18, 2007. Pl. Ex. A at 3.  The letter to Counselor Ryan only requests placement of plaintiff's Wiccan diplomas and documents in his institutional files. *Id.*

Plaintiff was transferred to Auburn Correctional Facility on September 13, 2007. Haggett Dec'l at ¶ 35; Lape Dec'l at ¶ 18. Plaintiff testified at his deposition that *he* requested the transfer.[12] (Depo. at 7-8). Defendant Haggett states that plaintiff was transferred before defendant Haggett could fully investigate whether plaintiff could possess all the items he requested. Haggett Dec'l at ¶ 35-36. Defendant Haggett cannot be held responsible for plaintiff's requests after he left Coxsackie. At plaintiff's deposition, he testified that he obtained his oils and his altar cloth after he was transferred to Auburn. (Depo. at 24, 30).

Plaintiff was denied his request for incense and an incense burner. Defendants argue that the denial of these items is reasonably related to safety and security interests. Defendants first state that incense burns for an extended period of time, increasing the chances of a fire, and more importantly, the smell of incense has been used to mask the odor of marijuana. Defendants point out, and plaintiff admitted at his deposition that his disciplinary record includes marijuana use. (Depo. at 9).

In *Auletta v. Goord*, Senior Judge Thomas J. McAvoy stated that "[i]t is clear that the potential harm on staff, inmates, and the facility presented with in cell burning is significant and serious." *Auletta v. Goord*, No. 9:07-CV-307, 2007 U.S. Dist. LEXIS 63549, *20 (N.D.N.Y. Aug. 28, 2007). From all the evidence in this case, it appears that defendants were attempting to provide plaintiff with his requested items, while making sure that the items were appropriate for in-cell possession and use. The fact that the plaintiff waited longer than he thought was

---

[12] Thus, plaintiff cannot claim that the transfer was somehow related to his religious claims.

necessary or that plaintiff believes that the defendants did not properly follow their directives does not rise to the level of a constitutional violation. *See Doe v. Connecticut Dep't of Youth Services*, 911 F.2d 868, 869 (2d Cir. 1990)(violation of state law alone is not actionable under section 1983).

Defendants have also submitted a memorandum from Gail Wood, a Priestess of the Pagan/Wiccan faith, who states that, among the items that are "nice" to have, but not "essential" to have, are ***incense***, a chalice, candles (even electric candles), a pentacle, statuary, oils, and robes. *See* Leonard Decl. ¶ 15 & Ex. B at 1-2.  Plaintiff acknowledged at his deposition that there would be alternatives to both the incense and the chalice. (Depo. at 57).  There is no indication that plaintiff has requested any of these alternatives and been denied.  This court finds that the defendants acted reasonably, and that any restrictions or delays experienced by plaintiff were reasonably related to legitimate penological interests.

## 4.   **Equal Protection**

Plaintiff alleges that Native American inmates are allowed to burn certain grasses and "smudge" in their cells.  Plaintiff alleges that this violates his right to equal protection which is a slightly different analysis than the First Amendment claim.

The Equal Protection Clause of the Fourteenth Amendment provides that the government shall treat all similarly situated people alike. *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995)(citation omitted).  Generally, the equal protection clause has been "concerned with governmental 'classifications that affect some

groups of citizens differently than others.'" *Engquist v. Or. Dep't of Agric.*, 128 S. Ct. 2146, 2152 (2008).  To establish an equal protection violation, the plaintiff must show that the defendants applied a different standard to similarly situated individuals. *Wiggins v. N.Y. City Dep't of Corr.*, 06 Civ. 1946, 2008 U.S. Dist. LEXIS 61262, *21 (S.D.N.Y. Aug. 12, 2008)(citing *Skehan v. Village of Mamaroneck*, 465 F.3d 96, 111 (2d Cir. 2006)).  Plaintiff must first show that he was treated differently than others similarly situated because of intentional or purposeful discrimination. *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005).  Then, plaintiff must show that the difference in treatment cannot survive the appropriate level of scrutiny. *Id.*

In this case, a review of the DOCS Directives shows that Native American inmates are allowed to possess and burn sacred herbs and a "smudging ashtray," used for burning small amounts of herbs to create smoke for ceremonial cleansing. DOCS Directive # 4202(L)(5)(b) & (c).  There are specific restrictions, however, on the in-cell ceremonial burning of herbs. *Id.* # 4202(L)(6)(a)-(6)(d).  The burning is permitted for only fifteen minutes, twice per day, and it is limited to a 22" sweet grass braid or one tablespoon of herbs. *Id.* 4202(L)(6)(b) & (c).  Plaintiff testified that his incense would have to burn continuously for approximately thirty-five to forty-five minutes. (Depo. at 35-36).  The court also notes that the Native American inmates are also limited to particular herbs. *Id.*

The fact that plaintiff's incense would have to burn more than twice the time required by the Native American ceremony, and that the incense could mask the odor

of marijuana, renders these two groups not similarly situated.  Thus, plaintiff's equal

protection claim may be dismissed.

3.  **RLUIPA Claims**

RUILPA provides that

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person -

(A) is in furtherance of a compelling governmental interest; and

(B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).  Under RLUIPA, the plaintiff bears the burden of showing

that his religious exercise has been burdened and that the burden is substantial.

*Marria v. Broaddus*, 200 F. Supp. 2d 280, 297 (S.D.N.Y. 2002)(citing 42 U.S.C.

§ 2000cc-2(b)).  The burden then shifts to the government to show that the burden

furthers a compelling governmental interest ***and*** that it is the ***least restrictive*** means

of achieving that interest. *Id.*  The act defines "religious exercise" to include "any

exercise of religion, whether or not compelled by, or central to, a system of religious

belief." 42 U.S.C. § 2000cc-5(7)(A).

A "substantial burden" is one that places "substantial pressure on an adherent

to modify his behavior and to violate his beliefs." *Singh v. Goord*, 05 Civ. 9680,

2007 U.S. Dist. LEXIS 78742, *15 (S.D.N.Y. Oct. 9, 2007)(citing *inter alia Jolly v.

Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996)).  Inconvenience alone is insufficient to

establish a substantial burden. *Id.* (citing *Westchester Day School v. Village of*

*Mamaroneck*, 379 F. Supp. 2d 550, 557 (S.D.N.Y. 2005)).  Furthermore, the

substantial evidence test presupposes that some inconveniences  may be so minor

that they do not amount to a violation. *See McEachin v. McGuinnis*, 357 F.3d 197,

203 n.6 (2d Cir. 2004)(discussing in a footnote the applicability of the "time-honored

maxim '*de minimis non curat lex*'").  However, the court should not attempt to

engage in resolving disputes as to whether a particular practice is "central" or

"mandatory" to a particular religion in determining whether a burden was substantial.

*See Ford v. McGinnis*, 352 F.3d 582, 593-94 (2d Cir. 2003) (discussing First

Amendment protections).

        As argued by defendants, plaintiff never raised any claim under RLIUPA until

his motion for summary judgment.  However, because of the liberality with which

pro se pleadings are treated, this court will address plaintiff's claim.  At best, the

delays in obtaining plaintiff's requested items resulted in inconvenience to plaintiff.

Plaintiff has been given access to everything that he requested except the incense and

incense burner.  Plaintiff testified that he has not requested a chalice while at Auburn

and acknowledged at his deposition that there are alternatives that he would

"consider . . . very acceptable." (Depo. at 52, 57).  There is no indication that he has

requested any of these alternatives, and certainly, the defendants at Coxsackie would

not be liable for the denial of items that plaintiff did not request.  Thus, plaintiff has

not established a RLIUPA claim.

**4.**     **Personal Involvement**

        Personal involvement is a prerequisite to the assessment of damages in a

section 1983 case, and respondeat superior is an inappropriate theory of liability. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)(citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).  In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id. See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

In this case, plaintiff has named Brian Fischer, the Commissioner of DOCS; Mark Leonard, Director of Ministerial, Family and Volunteer Services; and William Lape, the Superintendent of Coxsackie Correctional Facility.  There is no indication that defendant Fischer was in any way involved with plaintiff himself.  During his deposition plaintiff states that although he wrote to defendant Fischer, plaintiff never received any response from this defendant. (Depo. at 36-37).  The failure of a supervisory official to respond to a letter of complaint is insufficient to create personal responsibility. *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997); *Smart v.*

*Goord*, 441 F. Supp. 2d 631, 642-643 (S.D.N.Y. 2006).  Thus, defendant Fischer's

failure to respond to plaintiff's complaints is insufficient to render him personally

involved in any constitutional violation, and the lack of personal involvement is an

alternative basis for dismissal as against this defendant.

It appears that defendant Lape did personally sign the appeal of plaintiff's

grievance. Levin Decl. Ex. D.  The grievance was "accepted" to the extent that

plaintiff was told that he could practice his faith in accordance with Directive # 4202,

and plaintiff was again told that he could obtain other items through the package

room with a "local permit." *Id.*  Although delegating to a subordinate the

responsibility of investigating a letter of complaint does not rise to the level of

personal responsibility, *Sealy, supra.*, it appears that there would be a question as to

whether defendant Lape was personally involved in the investigation of plaintiff's

complaints.  Thus, the court would not have recommended dismissal as against

defendant Lape based upon a lack of personal involvement.

Defendant Leonard states in his declaration that he reviewed plaintiff's

requests and determined that the requested items were all likely associated with the

Pagan/Wiccan religion. Leonard Decl. ¶ 18.  However, he then states that he assigned

the task of determining whether plaintiff would be allowed to possess those materials

at Coxsackie to that facility's management personnel. *Id.* ¶ 19.  It does not appear

that defendant Leonard had any other involvement with plaintiff's case until he

became a defendant in this action. Thus, it is questionable whether defendant

Leonard would be considered personally involved in any of plaintiff's alleged

violations.

**WHEREFORE** it is hereby

**RECOMMENDED**, that plaintiff's motion for summary judgment (Dkt. No. 39) be **DENIED**; and it is further

**RECOMMENDED**, that defendants' cross motion for summary judgment (Dkt. No. 46) be **GRANTED**, and the complaint be **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Date: September 22, 2009

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge